## JOEL SHED *et al. vs.* ABEL SHED *et a.*

Where A. made an instrument, purporting to convey to his two sons, B. and C., certain tracts of land, with a reservation of the use of the land to himself, during his life, and delivered the instrument to D. to be delivered to B. and C as his deed, after his decease, in case he should not otherwise direct ; and A. died without giving any further directions,—it was held, that the instrument was to be considered as the deed of A. from the first delivery ; and that the conveyance might operate as a covenant by A. to stand seised of the land to his own use during life, remainder to B. and C in fee.

THIS was a writ of entry, in which the demandants counted upon their own seisin of several tracts of land in Stoddard, in this county, and upon a disseisin by the tenants.

Shed et al.
*vs.*
Shed et a.

At the trial here, October term, 1824, upon the general issue, the demandants offered in evidence to the jury, an instrument in the following words :

" Know all men, &c., that I, *Jonathan Shed*, of *S.*, &c.,
" in consideration of $200, and also for and in consideration
" of the love, and affection, and good will, which I have and
" bear to my sons, *Joel Shed* and *George Shed*, of the same
" *S.*, do hereby give, grant, sell, alien, convey, and confirm
" to them, the said *Joel Shed* and *George Shed*, their heirs
" and assigns forever, the following tracts of land, &c.

" And if either the said *George* or *Joel* should be taken
" away by death, before he arrives at the age of twenty-one
" years, or has lawful issue, the surviving one to inherit the
" whole of the said premises.

" To have and to hold the said granted premises, &c., to
" them, the said *J.* and *G.* their heirs and assigns, to their
" only use, &c., forever.

" And I, the said *Jonathan*, for myself, &c. hereby cove-
" nant, &c., to warrant and defend the said granted premises
" to them, &c.

" Hereby reserving to myself the full right, at any and at
" all times during my natural life, to enter on, and remain in
" full possession of any part or parts of said granted premises,
" to husband and manage the same in all respects, as I shall
" choose, to take and convert to my own use, the profits and
" esplees of the premises, to cut and carry off therefrom
" any timber, wood, or any other thing whatsoever, either
" by myself, or by employing others so to do, in as full and
" ample a manner, as if this deed had never been made.

" And provided also, that if the said *Joel* and *George* shall,
" for the term of one year, after they shall severally arrive
" to the age of twenty-one years, refuse or neglect to pay
" to my daughter, *E. S.*, the full sum of $200 each, and also
" to my daughter, *F. S.*, the full sum of $150 each, in the
" time above mentioned, and should either the said *J.* or *G.*
" be taken away by death, before he arrives at the age of
" twenty-one years, the survivor to pay the full sums, which
" both were to have paid, &c., then this deed shall be void ;
" but if the said *J.* and *G.*, or either of them, shall well and

Shed et al.
vs.
Shed et a.

" truly pay the said sums, above mentioned, to the said *E.*
" and *F.* as aforesaid, and shall at all times suffer me, the
" said *J.* quietly to possess the said granted premises, accord-
" ing to the true meaning and intent of the reservations, here-
" in above mentioned, then this deed shall be absolute for-
" ever.

"  Witness my hand and seal, October 12, 1822.

" J. SHED, & seal.

" In presence of us,

" T. H.
" S. H."

It was admitted, that the said *Jonathan Shed* was seized
of the demanded premises, which are the premises described
in the above instrument, on the 12th October, 1822, and
that the tenants were three of the heirs at law of the said
*Jonathan Shed.*

To prove the execution and delivery of the said instru-
ment, *S. H.*, one of the subscribing witnesses, was called,
who testified, that the deed was written by him, and ac-
knowledged by the grantor before him ; that, on the deed
being executed, it was put into his hands by *Shed,* the gran-
tor ; that it was not to be delivered or recorded during the
grantor's life, but was to remain subject to his revocation,
control, or alteration, during his life, and did remain in the
hands of the witness until *Shed's* decease ; after which it
was sent by the witness to be recorded, was returned to
him and delivered to the grantees, who were minors, in pur-
suance of the directions of the grantor.

The tenants objected :

1. That the evidence did not show a delivery of the in-
strument.

2. That if it could be considered as the deed of *Jonathan
Shed,* nothing passed by it.

And a verdict was taken for the demandants, subject to
the opinion of the court upon the foregoing case.

*Upham, Wilson,* and *Alexander,* for the demandants.

*Upham,* in support of the verdict, cited 4 *Mass. Rep.* 135,
*Wallis vs. Wallis.*—9 *Mass. Rep.* 307–310, *Hatch vs. Hatch.*—
13 *Johns. Rep.* 285, *Ruggles vs. Lawson.*—*Coke Litt.* 36 *a.*—

Shed et al.
*vs.*
Shed et a.

*Shep. Touch.* 58.—12 *Johns. Rep.* 536, *Verplank vs. Sterry.*—
Ditto 421, *Jackson vs. Phipps.*—1 *N. H. Rep.* 357, *Canning
et ux vs. Pinkham et a.*

*J. Parker,* for the tenants.

We deny the right of the demandants : 1. Because the instrument, under which they claim, is void, being, in fact, a conveyance of a freehold *in futuro.* 2. It never was delivered, and had therefore no validity as a deed. 3. It did not, and was not intended to operate as a deed, but was a testamentary disposition or devise, and void, not being executed according to the provisions of the statute. The importance of the case will perhaps excuse an extended examination of the grounds of defence.

I. The deed is void, because it conveys a freehold *in futuro.* It cannot be construed to be a covenant, to stand seized during the life of the grantor, on account of the nature and extent of the reservation. Instead of being a conveyance of the estate, as it then existed, " to hold after the death of the " grantor," as was the case in *Wallis vs. Wallis,* (4 *Mass. Rep.* 135,) cited for the demandants, which would reserve to the grantor the right to occupy, as tenant, for life ; the deed, in this case, reserved to the grantor the right to own, to use, waste, and destroy whatever he might please, and conveyed to the grantees an estate in such premises as he should leave, perhaps dilapidated, wasted and ruined. The right of exercising all acts of ownership, except making another transfer, is expressly reserved on the face of the deed. It is therefore strictly a freehold to commence *in futuro ;* a transfer of what should exist at his death. It cannot be said, that the grantor, by the deed, constituted himself tenant for life without impeachment of waste ; for the reservation goes far beyond that. There are limits, which tenant for life, without impeachment, cannot pass— many things, which he will be restrained from doing, such as cutting timber improper to be felled ; subverting the soil ; pulling down, or stripping buildings, &c. 1 *Cruise Dig.* 81.— *Estate for life, sect.* 62, *and cases cited.* But, in this case, *J. Shed* reserved to himself the right, during life, to manage the premises " in all respects as he should choose ;" to take,

Shed et al.
*vs.*
Shed et a.

and cut, and carry off, at will, " any thing whatsoever, in as " ample a manner as if the deed had never been made."

Again—the conveyance is wholly executory—the grantor retained an unlimited control over the deed, and the legal estate was not transfered ; which is the case in a covenant to stand seized. 4 *Cruise Dig.* 185, *Deed, Chap.* 12.—1 *Cruise,* 461. In order to have an instrument operate as a covenant to stand seized to the use of the grantor during life, and a deed to the grantee afterwards, it must take effect by passing an interest, and vesting the estate in the grantee, during the life of the grantor ; otherwise it amounts to no more than a covenant, that after his death his heir shall stand seized to the use of the grantee, which would be void. *Hobart's Rep.* 313, *Kibbot vs. Lee.*

Even when there is a conveyance to uses, and a power reserved, the estate is parted with—the land is gone. 1 *Roberts on wills,* 59. But, in this case, the land was not gone —the legal estate was not transferred ; because the deed was entirely in the power of the grantor, during life, and the grantees could take nothing, until after his decease. It could therefore be no more than a covenant, that his heirs should stand seized, and so void.

Farther, it was uncertain, and must so remain, until the decease of the grantor, who should take, or what kind of estate should pass. It might be a conveyance to either, or both, of the grantees, and they might take an estate in joint tenancy, or in common, according to the state of facts at the grantor's death ; and had he lived, until the grantees were twenty-two, without payment by them of the money specified, neither of them could have had any claim.

It must be apparent, then, that nothing could vest in the grantees, until the decease of the grantor ; and it follows, that this instrument cannot be construed as a covenant to stand seized, but is, in truth, a conveyance of a freehold *in futuro.*

II. It was never delivered, and had therefore no validity as a deed. Delivery is essential to every deed, and it takes effect only by, and from delivery. *Perk.* 137–145–149.— *Shep. Touch.* 57.—*Plowd.* 491.—2 *Co.* 5.—5 *Co.* 1.—4

Shed et al.
*vs.*
Shed et a.

*Cruise's Dig.* 28.—*2 Blk. Com.* 307, *et auth. passim.* It may be delivered by the grantor, or by another by authority from him—to the grantee, or to another person by authority from him—or to a stranger, for, and in behalf, and to the use of the grantee, without authority. *Shep. Touch.* 57.—*Cro. Eliz.* 862, *Cooper vs. Goodrich.* Or it may be delivered as an escrow, *Shep.* 58.

A deed will be absolute if delivered to the grantee. *Cro. Eliz.* 520–884. Or to a third person " as the deed" of the grantor. *Dyer* 167, *b.* Although to be delivered over on condition. *Perk.* 143–144. Or if delivered " to the use" of the grantee. *Shep.* 57. Or in trust for him. 1 *Johns. Ch. Rep.* 417. And we apprehend, that a deed delivered to a stranger, to be delivered over on the happening of an event, which will necessarily take place, if no power of restraint or control is reserved, will be a delivery as a deed, and to the use, and so absolute. 12 *Johns. Rep.* 546—*et auth. seq.*

An instrument is an ' escrow,' when it is delivered to a stranger, to be delivered over on the performance of some condition on the part of the grantee. This is the uniform definition, and so are the instances adduced, and cases cited. *Shep. Touch.* 58.—*Noy's Maxims, Chap.* 29, *note k.*—2 *Blk. Com.* 307.—4 *Cruise's Dig.* 20.—2 *Johns. Rep.* 259, *per Kent, J. Jackson vs. Catlin.*—2 *N. H. Rep. per Woodbury, J. Bickford vs. Daniels.* If delivered to a stranger, to be delivered over on a contingency, and no controlling power be reserved, it is, in some respects, in the nature of an escrow, being uncertain, and may perhaps be so considered, although the grantee have no power over the contingency.

In all these cases, the deed, from its delivery by the grantor, passes beyond his control. There can be no question of this, where the deed is absolute ; and, in case of delivery, as an escrow, where the title deeds were obtained from the stranger by the grantor, and pledged to a third person, it was held, that the grantee might maintain trover for them. 6 *Taunt.* 12, *Hooper vs. Ramsbottom.* This is a conclusive authority against a right of control in the grantor, after delivery as an escrow. The reservation of a right to revoke, would be utterly inconsistent with a delivery, to be delivered over

on the performance of a condition.   There is *traditio incho-ata*.   *Shep*. 59.—4 *Cruise* 30.   Performance of the condition is said to perfect the deed.   5 *Co. Rep*. 85, *Perryman's case*. The grantee is a party, and has an interest ; and a subsequent feoffment would not defeat it.   *Perk*. 9.   The performance of the condition, or happening of the event, is " merely the period appointed for the exercise of the right." 4 *South Car. Eq. Rep.* 632.—*Vide also Bac. Abr. Grant* J. 6. —1 *Strange* 165.

A deed may also be deposited with a stranger, and he constituted the agent of the grantor, with a power to deliver ; the grantor reserving the control, as a right to direct the time, or to alter, or revoke ; and this right of control may perhaps be either expressed or implied.   But so long as the grantor possesses this controlling power, nothing passes ; there is not even *traditio inchoata*, and it is not his deed.   10 *Mass. Rep.* 456, *Maynard vs. Maynard*.—12 *Johns. Rep.* 421, *Jackson vs. Phipps*.—1 *Johns. Cas.* 114, *Jackson vs. Dunlap*.

There is, in such case, no delivery, technically speaking, in any mode ; nor is the instrument an escrow, within any definition, or case decided.   It is, to be sure, the writing of the grantor, and the stranger is his agent, attorney, or servant, with a power to deliver the deed, according to the directions of his principal ; and his possession is the possession of the grantor.   If the grantor permits the instrument to be delivered over, it becomes his deed, being delivered by his agent, according to his authority.   *Shep.* 57.   And it takes effect, from the execution of the power.   *Cro. Eliz.* 167, *Willis vs. Jermin*.

But the authority, in such case, must be executed in the life of him, who made the deed ; otherwise it " availeth " nothing ;" for after his decease the right " is forthwith in " the heir."   *Litt. sect.* 66.   And if the authority " be in-" definite, without limitation of time," it determines with the life of him, that made it.   *Co. Litt.* 52, *b.*—*Willes,* 105, *n.*—*Ditto,* 565.

An agent represents his principal, and must act in his name. 9 *Co.* 76, *Coombe's case*.   Therefore, a letter of attorney, to deliver seisin after the death of him, who makes it, is abso-

Shed et al.
vs.
Shed et a.

lutely void ; for the attorney cannot deliver seisin during the life of the party, nor can he do it after his death. *2 Livermore on Agency*, 301.—*Co. Litt.* 52, *b.*—*4 Camp. N. P. Rep.* 274.

Had *Shed*, by power of attorney, authorized *Harrington* to deliver this deed after his death, the authorities just cited, clearly show, that the power would have been void. Or, had he constituted him attorney, with a power to deliver generally, the authority, if unexecuted, would have been determined by the death, and the deed defeated. But, in the case at bar, *Harrington* was constituted attorney by parol, and, it is surely strange, if *Shed* could do that by parol, which he could not do by deed ;—if *Harrington's* power is not void, but survives in the one case, and not in the other. We repeat, and the whole facts are so, that *Harrington* was the mere agent of *Shed*—his authority, a mere order—his possession, *Shed's* possession.

The deed cannot be considered as delivered to *Harrington* as the agent, and for the use of the grantees ; for, in that case, it would be absolute, which this could not be, *Shed* having full control of it. It is a contradiction in terms, to say, the deed was *delivered*, when the grantor parted with nothing, and the grantees took nothing, not even an inchoate right.

Again—an instrument, delivered as an escrow, takes effect from the second delivery, and is not the grantor's deed until that time. *Perk.* 138.—*6 Mod.* 217, *Bushel vs- Pasmore.*—*1 Johns. Ch. Rep.* 297, *Frost vs. Bechman.* This is recognized and admitted as the rule, *2 Mass.* 452, referred to in *9 Mass.* 310, cited for plaintiffs, and *Coke, 3 Rep.* 35, says, " in truth " it is not his deed until the second delivery." Of course, no title, and, on account of the power of control, reserved in this case, no interest, vested in the grantees until the delivery by *Harrington*, after *Shed's* death. Up to that time the deed had no operation. They had nothing, which they could grant, or assign, or in any way render available to them.— Had either died in the life of the grantor, his heirs could not have taken. *Rob. on Frauds*, 323. Or his widow, if he left one, been endowed. *Shed* continued the owner, to every intent and purpose. He might have recalled the deed, and

Shed et al.
    vs.
Shed et a.

cancelled it. He might have granted the land, and the grantee would have held it. He had power a moment previous to his decease to dispose of it by will. The probate court had authority to assign dower to his widow, 2 *N. H. Laws*, 164. In fine, he died seized in fee ; and immediately on his death a descent was cast, and the land vested in his heirs. *Litt. sect.* 66.—3 *Blk. Com.* 168.

To this it is objected, that the deed, being an escrow, on the second delivery, it shall have relation back to the first, so as to prevent the descent ; and we are aware, that there is such an exception to the general rule, (3 *Co.* 35, *Butler and Baker's case*,) but we contend, that it has no application to a case of this character. As stated by *Coke*, it applies to a case, where something was to be performed by the grantee ; and we presume we do not err, in suggesting, that the exception must have originated in some case of an escrow of that description. There is an evident necessity, that a grantee, on fulfilling a condition to be performed by him, should be permitted to receive the land, for which he contracted ; and to the propriety of this exception we readily accede.— But the case at bar is far different. Here is no contract, on which the grantees are to take—no part performance of a condition ; for nothing was to be performed—no preparation for performance, which might be of great prejudice to the grantee, if the death of the grantor were to avoid the deed.

The doctrine of relation, as to " escrows," was for enabling the contracts of parties to be fulfilled. This is the extent, to which the English cases carry it. The remarks of *Chief Justice Parsons*, (2 *Mass.* 454,) extend it farther, but the authorities, cited by him, are all of escrows, on condition to be performed, and will not bear him out in the application of this doctrine of relation to a case, where nothing was to be done by, and no meritorious consideration moved from, the grantee. A necessity, such as he speaks of, would make every void instrument operative ; for that necessity, when scrutinized, is, it seems, that the instrument should operate —by fact, if it may, if not, then by fiction—peaceably, if it can, forcibly, if it must—according to the rules of war, if possible, otherwise, *ex necessitate* against them. Besides, the

Shed et al.
*vs.*
Shed et a.

decision of that case was finally placed by him, upon the ground, that the deed was delivered in trust, and so absolute.

This doctrine of relation, back to the first delivery, is a fiction. *3 Co.* 35.—1 *Johns. Ch. Rep.* 297, and "*fictio legis* "*inique operatur alicui damnum vel injuriam.*"—*Ibid.* A relation or fiction of law, shall never work a wrong charge to a third person, but *in fictione juris semper est aequitas. Coke Litt.* 150, *a.* It shall, in many cases, help acts in law, but shall never help acts of the parties, that is to say, to make void acts, of the parties, good. *3 Co.* 29.—1 *Roberts on Wills* 245. It doth not, in favor of a devisee on condition, prejudice the heir, who is a third person, upon whom, by the death of the devisor, the lands descend, " and will not devest that, " which the law, by descent, had lawfully vested by the " death of the devisor." *3 Co.* 29. Again—the law will never make any fiction, but for necessity, and the avoidance of mischief. *3 Co.* 30.—3 *Black. Com.* 43. And in 1 *Johns. Ch. Rep.* 297. *Kent, Chancellor*, says, that the general rule, as stated by *Perkins*, (*sect.* 138,) that a deed takes effect only from actual delivery to the grantee, " is only to be con- " troverted, when justice requires a resort to fiction." " But " here is a struggle between innocent persons, to avoid a loss, " and we ought not to resort to fiction to help one as against " the other. The transaction must be left to its simple and " naked truth."

So in our case, the struggle is between persons equally innocent, and making the case as strong as possible for the plaintiffs, equally meritorious. The grantees have done nothing, and were to do nothing, as the condition, on which they were to receive the deed. What " equity" is there in resorting to relation, to the " damage" of the defendants ? What " necessity" that this " act of the party," being in truth a deposit, with a power to deliver after his death, and so void, should be made good by relation, and the estate, which descended and " lawfully vested" in the heirs on the instant of the death, be " devested ?" What " mischief" is here to be avoided ? What "justice requires a resort to fiction ?" There shall be no strained construction to work a disherison. 2 *Vern.* 340, *Cary vs. Bertie.—Ditto* 571, *Lon-*

Shed et al.
vs.
Shed et a.

*don vs. Garway.* The same reason for resorting to fiction exists in every case, where a man fails to do something according to law, which, as in this case, whim, or something worse, instigated him to attempt.

With one exception, the authorities cited for the demandants, are all materially variant from the present case, there being no right of control reserved by the grantors, after the execution of the deeds. The instruments were, in fact, deeds presently ; deeds before the death of the grantors, of which there is here no pretence.

In 2 *Mass. Rep.* 453, *Wheelwright vs. Wheelwright,* the weight of evidence was considered great, if not conclusive, that the instruments were delivered by the grantor *as his deeds,* and deposited in trust. There was no evidence, that he was to have any control, after the delivery to the depositary, but the contrary. So in 9 *Mass.* 310, *Hatch vs. Hatch,* no right of control was reserved ; and the court say, the writings deposited " are to be considered as then effectually " delivered to the use and benefit of the grantees." *Canning vs. Pinkham,* (1 *N. H. Rep.* 387,) goes expressly on the ground, that the design was to " treat the deed as executed," and kept for the " use" of the grantees. In 12 *Johns.* 421, *Jackson vs. Phipps,* a delivery " to the use," is treated as an absolute delivery, which is wholly inconsistent with a power of revocation ; and in *Verplank vs. Sterry,* the deed to the daughter was held not to have been subject to the control of the grantor, 12 *Johns.* 546, 47, 50, *Ruggles vs. Lawson.*—13 *Johns.* 285, is the only case cited for the plaintiffs, in which the grantor reserved any control over the instrument, and of that case, which does not seem to have been much considered, we have only to say, that if any faith is to be given to previous established principles, it is not, and cannot be law. Even that case differs from this, on the face of the instrument, and in the generality of the right of control, reserved to the grantor.

The argument, then, on this part of the case respecting the delivery, is, 1. That this instrument, having been expressly subject to *Shed's* control and alteration, was not delivered, but must be considered as deposited with *Harrington,* as his agent, and as much in *Shed's* possession as if in his

Shed et al.
vs.
Shed et a.

own hand. 2. That if it be considered as delivered as an escrow, it cannot then be made operative except by resort to a fiction, which was invented for a case wholly different, and the reason and necessity of which have no application here.

Our remarks, thus far, have been predicated upon the ground taken by the demandants, that the conveyance is to be regarded as a deed, and we have endeavored to show, that even as a deed it must be inoperative, but—

III. This instrument did not, and was not intended to operate as a deed, but was a testamentary disposition, or devise, and void, because not executed and authenticated according to the statute.

There is nothing in the *form* of the instrument to prevent its being considered a devise. Every devise must be attested by three witnesses ; but the form of the instrument is not material. 1 *Swinburne, sect.* 10, *p.* 74, *note.—Powell on Dev.* 8. It may be in the form of a letter. *F. Moor's Rep.* 177, *West's case.* Of an indenture, 4 *Leon.* 166, *Audley's case.— Dyer* 166, *a. S. C.—Rep. temp. Finch,* 195, *Hickson vs. Witham.—Cas. in Chan.* 248, *S. C.* Of articles of agreement. 1 *Mod.* 117, *Green vs. Proude.—3 Keb.* 310, *S. C.* Or of a deed, signed, sealed, and delivered. 2 *Ves.* 258, *Rigden vs. Vallier. Ouseley vs, Carrol. and Shargold vs. Shargold, cited 2 Ves.* 440. The statute having required no particular form, any paper writing, which would have constituted a devise before the statute, will be equally valid as such, since, if the attestation, &c. is in compliance with the act. *Powell on Dev.* 33.

It is not only not necessary, that the instrument should be in the usual form of a will, but it is not necessary, that the testator should have intended to make a will. In *Habergham vs. Vincent,* (2 *Ves. Jr.* 231,) which was a case of a deed, to take effect, by way of appointment, after the death of the party, *Mr. Justice Buller* says, " whether the testator would " have called this a deed or a will, is one question, whether " it shall operate in law, as a deed, or a will, is a distinct " question. That is to be governed by the provisions of the " instrument. A deed must take place upon its execution, " or not at all. It is not necessary for a deed to convey an

Shed et al.
*vs.*
Shed et a.

" immediate interest in possession, but it must take place " as passing that interest, to be conveyed at the execution, " but a will is quite the reverse." And, in that case, which was fully considered by the *Chancellor*, aided by *Justices Wilson*, and *Buller*, the latter remarks upon the cases there cited ; " those cases have established, that an instru-" ment in any form, whether a deed poll or indenture, if the " obvious purpose is not to take place till after the death of " the person making it, shall operate as a will. The cases " for that are both at law and in equity, and in one of them " there were express words of immediate grant, and a consid-" eration to support it as a grant, but as upon the whole the " intention was, that it should have a future operation after " death, it was considered as a will,"—and they all held, that the instrument ' though called a deed, though in form a deed' was in its nature testamentary, and being attested by only two witnesses, could not pass the freehold estate, contrary to the provisions of a positive statute. *Vide also* 4 *Bro. Ch. Rep.* 353, S. C.—1 *Rob. on Wills* 59.—*Ditto on Frauds*, 337.

The question is then not what is the form, but what is the substance of this instrument ; for that determines its character. If the intention of the grantor was important, (*Powell on Dev.* 9.—4 *Leon.* 159,) *Shed* in this case intended to make an instrument disposing of his estate after his death ; and we shall find, on the whole case, that it has all the other substantial characteristics of a devise. It is " making over " one's effects, in case of death, till then to be reversed or " altered at pleasure, and in the mean time reserving the " whole right of possession and enjoyment." *Swinburne sect.* 7, *p.* 54 *note.* A declaration of the mind disposing of an estate to take place after the death of the testator. *Bac. Abr. Wills, &c. A.*—*Swinb. sect.* 2.—4. Giving lands to another after his decease. *Shep. Touch.* 401. It had no life or virtue until his death ; was ambulatory, *usque ad extremum vitae exitum. Ibid.* 4 *Co.* 61, *b.*—2 *Atk.* 167. Mutable and inchoate, vesting nothing. 2 *Ves.* 76. Incomplete, and revocable, by which grantor parted with nothing before his death, but had the same absolute dominion he had before. 1

Shed et al.
vs.
Shed et a.

*Rob. on Wills* 60. An instrument in writing, in the nature of a will, which comes to the same thing, and shall have the same consequence as a will, 2 *Ves.* 75-6,

There is, it is true, no executor, nor is any necessary to a devise. *Shep. Touch.* 416.—*Bac. Abr. Wills, A.* But otherwise it is testamentary on the face of it. It was made for love and affection—provided cross executory interests— was not to take effect in possession until the death of the grantor—reserved to him all right to manage as he pleased during life, and charged the lands with legacies to the daughters, or rather devised them on condition. *Shep. Touch.* 400. When to this is added, that, like a will, he held it under his control, countermandable at pleasure, what particle of the substance of a devise does it lack? If, in substance it is a devise, it is void, and cannot, and ought not to operate as a deed. 7 *Ves. Jr.* 372.

The statute must apply to this case, for no one reason exists for requiring the attestation of three witnesses to a will, which does not apply with undiminished force here. The statute was to prevent frauds—frauds upon men, " whose " hands have survived their heads ; who have still strength " enough to write a name, or make a mark, though the ca- " pacity of disposing is dead." *Lord Camden's opinion in Doe ex dem. Hindson vs. Kersey*, 1 *Day's Rep.* 57, *in note.*— Are not their hands as likely to place their names to an instrument in the form of a deed, as to one in the usual form of a will, when that deed does not purport to divest them of any controlling power during life, and is to be revocable at pleasure ? Are their heads more competent to the one than the other ?—Witnesses to a deed only attest the execution, but in case of a will, " the testamentary capacity of the tes- " tator is verified by the subscription of the witnesses," 1 *Rob. on Wills* 142. " The testator is intrusted to their care. " Their business therefore is not barely to attest, but to try, " judge, and determine, whether the testator is compos to " sign and publish." *Ld. Camden.* 1 *Day*, 57, 58, *note*— 1 *Bay's Rep.* 349, *Heyward vs. Hazard.* Is there not the same reason why the capacity of granting should be verified here, as in case of a will in form ; and ought there not as ev-

Shed et al.
*vs.*
Shed et a.

idently to be the same trial and judgment, in the case of a formal deed, under control and not perfected, and by as many witnesses? Is not the heir at law equally injured and in the same manner; and are not love and affection, caprice and dislike, persuasion and imposition, equally the moving causes and considerations? The intent of the act was to prevent frauds as well as perjuries, and it appointeth three witnesses, to the end, that it might be done in such a solemn and notorious manner, that they might see, that the devisor did not suffer any imposition. 1 *Ld. Raym.* 507, *Hilliard vs. Jennings.* Is not equal caution requisite, in relation to any instrument, which is ambulatory, and only to be consummated after the death of the party?

It is not competent for the party to resist the idea of imposition, and forego the benefit of the statute. 4 *Bro. Ch. Rep.* 282.—*Powell on Dev.* 67. And it is said in *Lea vs. Libb,* (*Carth.* 37,) "the statute hath prescribed a certain method, "which every one ought to pursue, in order to prevent fraud." We have contested this case before the jury on the ground of incapacity, and we have a right to presume, that had three witnesses been present to try, judge, and determine upon the grantor's mind, this instrument would have shared the fate of his will of personalty, made near the same time.

If this instrument be supported, the statute is nugatory; for no will of lands need be attested according to its requisitions. By changing the form of words, from " in the name of " God Amen," which has never been supposed to be substance, to " Know all men by these presents," &c. and depositing the conveyance in the hands of a third person, any will may be made effectual without attestation.

It was formerly supposed, that a person might, by means of a will duly executed, empower himself to make future disposition of land by another instrument not duly executed. On this doctrine *Mr. Fearne* observes, " if a man might by a " will duly attested devise his lands upon such trusts, as he " should appoint by any other instrument, it would in effect " amount to a repeal of the statute of frauds, in respect to " the solemnities of testamentary dispositions of land." For his reasoning more at large, *vide* 6 *Cruise's Dig.* 69. *Devise*

Shed et al.
vs.
Shed et a.

*Chap.* 5, *sect.* 46. What is the present case, but an attempt by the grantor, to empower himself to give lands, by an instrument not duly attested ; and why is it not as effectually a repeal of the statute, as it would be had he made a will, devising the lands upon such trusts, as he should afterwards, by writing, appoint.

Whenever the disposition is originally and substantially testamentary, it is within the statute ; and every part of such disposition, whether primary, additional, or supplemental, requires to be executed as the statute directs. *Fearne's Posth.* 43, *cited Rob. on Frauds,* 333, *note* 121. A person cannot empower himself to give lands by a will not duly attested. When the owner of an estate in land, either in law or equity, reserves to himself a power to dispose of it, to such uses as he, by will, shall appoint, that must be such a will, as, within the statute of frauds, would be proper for a devise of land ; otherwise the statute would be evaded. 2 *Ves.* 366, *Jones vs. Clough.* And such will, attested by two witnesses, cannot operate by way of appointment, but is void. 2 *Peere Williams,* 258, *Wagstaff vs. Wagstaff.*—2 *Vern.* 598, *Att'y. Gen. vs. Barns et ux.* So where the power reserved is to dispose by will, or other writing, in the nature of a will, it is still void. 1 *P. Williams,* 740, *Longford vs. Eyre.* So a man cannot give a power to his executors to sell lands, by a will not executed according to the statute. *Powell on Dev.* 40. Or charge the lands with legacies, by any such testamentary disposition. 14 *Mass.* 422, *case of Winslow et a.*

*Dicta,* that judges are to be ' subtle' and ' astute' in devising ways, in which an estate, attempted to be conveyed, may pass, are to be found in some cases. If these dicta are correct, any defence to any thing, purporting to be a conveyance, must be hopeless ; but, in our estimation, they do not deserve, and we believe they will not here receive, a judicial sanction. The true principle is, as stated by *Mr. Justice Wilson,* (4 *Bro. Ch. Rep.* 381,) that where a man has expressed a clear and *manifest intention to dispose of his estate,* and he mistakes the mode of so doing ; yet if the instrument can be considered as valid in point of *substance,* so as to effectuate the intention of the party, its informality shall be over-

Shed et al.
*vs.*
Shed et a.

looked, and the deed take effect, *if by law it can.* That instruments should receive a liberal construction, as to form, as well as interpretation, (1 *Inst.* 36, *a.*) we do not deny ; but we believe, there is not even a *dictum,* which requires a court to be so astute, as to give effect to an instrument, which conflicts with the positive provisions of a statute.

It is said, (1 *Rob.* 94,) in relation to the execution of wills, that courts of justice, " instead of strictly executing the in-" tention of parliament, seem to have studied to frustrate " its caution." It only remains for testamentary acts in the shape of deeds to be held valid, and the caution of the legislature, so far as respects the number of witnesses, and their duty to inquire of the capacity of the testator, will, in truth, be completely ineffectual. An act is not more or less testamentary, because it has a witness more or less. If this disposition was testamentary at the time it was executed, and up to the time of *Shed's* decease, no subsequent delivery can change the nature of it ; but it remains a testamentary disposition. If it was testamentary, it was void ; and no subsequent proceedings can make it valid. If it was ambulatory until *Shed's* death, there can be no relation or fiction, which shall, with propriety, make it operative as a deed.

RICHARDSON, C. J., delivered the opinion of the court.

The grounds, on which the counsel of the demandants have contended, that the verdict is to be supported, are, that the instrument, under which they claim the land, was delivered to *Harrington* as an escrow, to be delivered to the grantees upon the death of the grantor ; provided he should not sooner revoke it ; that upon the death of the grantor, he never having revoked the instrument, *Harrington* delivered it to the grantees as the deed of the grantor ; that this last delivery made the writing the deed of the grantor, from the first delivery ; that the grantor is, therefore, now to be considered as having stood seized of the land, from the first delivery, to his own use during life, and after his decease to the use of the grantees in fee ; and that these uses are now to be considered as executed by the statute of uses, from the first delivery.

And to show, that a writing may be delivered as an escrow

Shed et al.
vs.
Shed et a.

to be delivered as the deed of him, who made it, after his death, and that the writing, so delivered, may, when duly delivered after the death of the grantor, be considered as his deed from the first delivery, the case of *Wheelwright vs. Wheelwright*, (2 *Mass. Rep.* 447,) has been cited as an authority in point.

And the demandants rely upon the case of *Ruggles vs. Lawson*, (13 *Johns.* 285,) as an authority to show, that an instrument may be thus delivered as an escrow, subject to be revoked by the grantor.

And to establish the proposition, that, notwithstanding the deed seems to purport to convey a freehold *in futuro*, yet it may operate, according to the intention of the grantor, as a covenant to stand seized to uses, the case of *Wallis vs. Wallis*, (4 *Mass. Rep.* 135,) is cited as directly in point.

If the cases, thus cited, on the part of the demandants, are sound law, they seem to us to establish all the points, which are necessary to be maintained, in order to support the verdict. We shall therefore proceed to examine the objections, which are made to the verdict, on the part of the tenants.

It is contended for them, that this instrument did not, and was not intended, to operate as a deed ; but was a testamentary disposition, or devise, and void, not being executed with the formalities required by the statute ; and that to give effect to it, as a deed, would render nugatory the statute relative to the execution of wills.

It may be conceded, that the law requires no particular form of words in a will. In *West's case*, (*Moore* 117,) which was decided in the reign of *Queen Elizabeth*, and, of course, before witnesses were essential to the validity of a will, to pass real estate, it was held, that a letter, declaring in what manner the writer intended his real estate should go, was a good devise. It is very probable, that, if this instrument had been executed in the manner the statute requires, it might have operated as a will to pass the land. It may also be conceded, that if this instrument can be held to pass the land as a deed, the conveyance does, in its operation, very much resemble a devise. The grantees, in fact, had no vested interest, until after the death of the grantor ; and the

Shed et al.
vs.
Shed et a.

latter had the same control over the deed, during his life, that he would have had over a will. Yet still, in our opinion, this is not to be considered as a will. In the first place, it is not to be so considered, because it was not intended to operate as a will. It is in the form of a deed. It is called a deed by the grantor. 5 *D. & E.* 95. It is executed as a deed. There is nothing in the instrument, which indicates that the grantor thought of a will. In the next place, it is not to be considered as a will, if it may operate as a deed; because, as a will, it is void; and the court is bound, by law, to give the instrument such a construction as will give effect to the intention of the grantor, if it may be legally done.— This is not a matter of discretion. It is a duty of the court. And if this instrument may operate as a deed, it would be contrary to common sense to pronounce it a will, because it may, in its operation, resemble one, and then declare it void, because it has not the forms of one. 1 *N. H. Rep.* 64, *Chamberlain vs. Crane.*—4 *Mass. Rep.* 135, *Wallis vs. Wallis.*

But it is said, that this conveyance, if the instrument can operate as a deed, so precisely resembles a devise, that it will render the provisions of the statute, relative to the execution of wills, nugatory. If this be so, it will certainly deserve consideration, whether this case should not be held to be an exception to the rule we have just stated.

In order to determine the weight of this argument, it becomes necessary to ascertain in what this resemblance consists, and what were the views of the legislature in those provisions of the statute. The resemblance, on which counsel rely, is, that this instrument, if valid, makes a disposition of the land to take effect after the death of the grantor, he still retaining a power to revoke and alter the grant. In these respects, there is certainly a close resemblance between the disposition of the land, attempted by this grantor, and a devise; and if the statute requires, that wills shall be executed in the presence of three witnesses, because a devise is to take effect after the decease of the testator, and because he has a right to revoke and to alter his will, the argument, which counsel draw from this resemblance, is entitled to great weight. But it has always been understood,

Shed et al.
*vs.*
Shed et a.

that it was because wills were often made near the close of life, in old age, in sickness, and in great debility both of body and mind, and because individuals often availed themselves of these circumstances to obtain wills by fraud, and afterwards supported them by perjury, that the statute declared, that " all devises and bequests of any estate in lands, tenements, " and hereditaments, shall be in writing, and sealed by the " party devising the same, and signed by him or by some " person in his or her presence, and by his or her express " direction, and shall be attested and subscribed, in the " presence of the said devisor, by three or more credible " witnesses, or else shall be void and of none effect." The situation of testators, in many instances, renders fraud and imposition easy and practicable ; the statute therefore, to prevent these, declares, that no devise shall be valid, unless the will be executed in the manner the statute prescribes. It was for these reasons, and with these views, that those provisions were adopted ; (*Powell on devises* 77.—1 *Burrows* 420,) and not because devises take effect after death, or because the devisor has a control over the will, so long as he lives.

Deeds may be, and sometimes are, procured from the aged and infirm, by fraud and imposition. But this has not been so frequently the case, as to induce the legislature to enact any particular provisions to prevent it. Deeds and wills stand on grounds entirely distinct, in this respect. Every man, therefore, who is competent to dispose of land, may convey all his real estate by a deed in any form, which the statute or common law of the state allows ; he may thus grant a present estate, or a future interest ; he may thus convey absolutely or conditionally ; and he may do all this without infringing, in the least, upon the policy of the provisions of the statute, relative to the making of wills.

The argument of the counsel, which we are now examining, seems to us to prove too much. For if the conveyance of a future contingent interest, by deed, has a tendency to render nugatory the provisions of the statute in relation to the execution of wills, most surely the conveyance of all a man's estate by deed, absolutely, must have the same tendency, in

Shed et al.
vs.
Shed et a.

a much greater degree. For the inducement to procure the conveyance of the whole estate, by fraud, would be greater than it would be to procure a conveyance of part. And we are not aware, that the one could be more easily accomplished by fraud ; or, when accomplished, could be more easily detected, than the other. It seems, therefore, that there are, at least, as strong objections, in this respect, against all conveyances by deed, as there are against the particular conveyance, which was attempted in this case.

For these reasons, we are of opinion, that this objection, which counsel have urged against the conveyance, in this case, is not a sufficient answer to the authorities, which have been cited in support of the deed.

But it is further urged, that the instrument, under which the demandants claim, is void, because it, in fact, attempts to convey a freehold *in futuro.*

It is by no means clear, that this instrument would be void, if it must be considered as a common law conveyance, and if the reservation must be considered as a reservation of a freehold. For the whole estate is granted in the premises of the deed, and the reservation would be repugnant to the grant. Now, in such a case, it seems always to have been supposed, that the reservation, and not the grant, was void.

But we entertain no doubt, that if this instrument can have any operation, it may take effect as a covenant to stand seized ; in which case, this objection vanishes altogether.— 4 *Mass. Rep.* 135, *Wallis vs. Wallis.*—2 *Sanders uses,* 90.— 4 *Taunt.* 20, *Doe vs. Whittingham.*— *Willes Rep.* 692, *Roe vs. Tranmarr.*

It is insisted, that, if the maker of the writing reserve to himself a control over its ultimate disposition, it cannot be an escrow ; and the case of *Hooper vs. Ramsbottom,* (6 *Taunt.* 12,) is cited as establishing this point conclusively. But an attentive examination of that case will shew, that the only point decided was, that where writings are deposited as escrows, by contract between two parties, to be delivered as deeds upon the payment of the money, they were lodged to secure ; when that money is paid or tendered, the writings become deeds, and the grantee may maintain trover for them ;

Shed et al.
*vs.*
Shed et al.

although they have been taken away by the grantor and pledged to a third person. In that case, the writings were deposited by contract, without any condition, except the payment of the money, and the taking of them away was held to be a fraud. But in the case now before us, the writing was intended to effect a mere voluntary disposition of the land ; and why the grantor might not reserve to himself a right to revoke the writing, if he saw fit, does not readily occur to our minds. If he might legally deliver the writing, absolutely to take effect upon his decease, we do not see, why he might not deliver it conditionally, as an escrow, to take effect upon his decease, in case he did not change his mind, and revoke it. Being the absolute owner of the estate, it seems to us, that he had an incontestible right to deliver the instrument absolutely or conditionally, according to his will and pleasure. We know of no principle of law, that could control him in this respect.

Another argument against the validity of this instrument is, that it could not be delivered after the death of the grantor ; because the authority of *Harrington*, the agent, ceased upon the decease of *Shed*, the principal. But the answer to this is, that no authority to deliver the writing after *Shed's* decease was necessary to give it effect. It was delivered to *Harrington* to be the deed of the grantor at his decease ; provided he did not revoke it. And when he died without revoking it, the writing became his deed ; whether *Harrington* delivered it over to the grantees or not. Suppose he had refused to deliver it, can there be a doubt, that the demandants might have maintained trover for the conversion of the deed ? In the case of *Hooper vs. Ramsbottom*, cited by the counsel of the tenants, trover was maintained for *the deeds* ; although there was no second delivery. And there are, in the books, many other cases to the same effect. *Perkins* 139–140.— *Shep. T. 59.—3 Coke 35.—5 ditto 85.*

Another argument against the validity of this instrument is, that it requires a relation by fiction of law to the first delivery, which ought not to be permitted in this case ; because the struggle is between innocent parties standing on the same ground. It is said, that it would be great injustice to give

Shed et al.
*vs.*
Shed et a.

one party any advantage by fiction of law. But let us examine a moment the ground, on which these parties respectively stand. Both are without doubt to be considered as innocent. But what is the nature of their respective claims ? The grantor, *Jonathan Shed*, had an unquestionable right to give the land to whom he pleased ; and his intention to give the estate to these demandants is equally unquestionable. Now the demandants rest their claim upon the clear intention of the grantor, and the well settled rule of law, that we are bound to give effect to that intention, if it can in any way be legally done ; while the tenants not only claim the land against this rule of law, but also in opposition to the intention of the grantor. Is this an instance of parties standing on equal ground, in which the principle of relation cannot be applied ? If it be, no one can be imagined, in which the principle may be applied. For the effect of relation is always to give efficacy to a conveyance, which passes the estate from one person to another. If to give to this instrument its legal effect, by relation, works a wrong to these tenants ; it is a wrong, that every application of the principle of relation works, and nothing more. This case seems to us, to furnish no ground, on which it can be taken from the operation of the general rule.

These are the principal objections, which have been urged against the title of the demandants, in the very able argument in favour of the tenants. We have examined them with much care and attention, but they do not seem to us to shake the authority of the cases, on which the demandants rest their cause. We are of opinion, that the instrument may be considered as the deed of the grantor, from the first delivery ; and that the estate passed to the grantees by way of covenant, to stand seized.

If this deed could be considered only as a common law conveyance, other difficulties might hereafter arise out of it. It is a maxim of the common law, that no estate in fee can be made to cease as to one, and take effect, by way of limitation upon a contingent event, in favour of another person.— In this deed, a fee is given to the grantees with a proviso, that, in case one dies before a certain time, his estate shall

go to the other. This is, in truth, limiting an estate upon a fee, which cannot be done by a common law conveyance. But it is now settled, that limitations of this description may take effect by way of use ; and they are what are called springing or shifting uses. 1 *Sanders on uses,* 143 ; so that this deed may legally take effect, in every particular, according to the intention of the grantor.

*Judgment on the verdict.*